UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY ANGELA UPLINGER,

          **Plaintiff,**

v.

          18-CV-481-HKS

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          **Defendant.**

## DECISION AND ORDER

Plaintiff Mary Uplinger brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by a United States magistrate judge pursuant to 28 U.S.C. § 636(c). Dkt. No. 15.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 11, 13. For the reasons set forth below, Plaintiff's motion is denied, and the Defendant's motion is granted.

## BACKGROUND

On November 18, 2015, the plaintiff protectively filed applications for DIB and SSI with the Social Security Administration ("SSA") alleging disability since June 20,

1

2015, due to depression, anxiety, and panic attacks. Tr.[1] 16[2], 186-92, 193-99, 225. On March 28, 2016, the plaintiff's claims were denied by the SSA at the initial level. Tr. 120-27. On December 4, 2017, the plaintiff appeared with her attorney and testified before Administrative Law Judge, Steven Cordovani ("the ALJ"). Tr. 34-95. A vocational expert ("VE") also testified during the hearing. *Id.* On December 18, 2017, the ALJ issued a decision finding the plaintiff was not disabled within the meaning of the Act. Tr. 14-33. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on February 23, 2018. Tr. 1-8. Thereafter, the plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## **LEGAL STANDARD**

I.   **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether

---

[1] References to "Tr." are to the administrative record in this matter. Dkt No. 8.
[2] The plaintiff filed an application for SSI on July 9, 2015. In his decision, the ALJ used the earlier of the two onset dates, June 20, 2015. Tr. 16.

[the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental

work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above. First, the ALJ found the plaintiff met insured status requirements of the SSA through March 31, 2020. Tr. 19. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since June 20, 2015, the alleged onset date. *Id.* At step two, the ALJ found the plaintiff has the following severe impairments: major depressive disorder, recurrent and severe without psychotic features; unspecified anxiety disorder with panic attacks; asthma; and urinary stress

4

incontinence. *Id.* At step three, the ALJ found that the plaintiff's impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 20.

Next, the ALJ determined the plaintiff retained the RFC to perform light work[3] with additional limitations. Tr. 21-22. Specifically, she can only occasionally kneel, crouch, and crawl; she must avoid exposure to extreme heat and cold, wetness, humidity, concentrated fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. Tr. 21. Further, she can understand, remember and carry out simple instructions and tasks; is able to work in a low stress work environment reflected by simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes. Tr. 21-22. She is capable of frequent interaction with supervisors, occasional interaction with coworkers and public. Tr. 22.

At step four, the ALJ relied on the VE's testimony and found that the plaintiff was unable to perform her past relevant work as a Massage Therapist (DOT #354.374-010: semi-skilled work with a Specific Vocational Preparation ("SVP") level of 4, with a medium level of exertion. Tr. 27. At step five, the ALJ considered the plaintiff's age (49 on the amended alleged disability onset date but considered a person

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567

5

closely approaching advanced age on the date of the decision); high school education; ability to communicate in English; work experience; RFC; and concluded based on the VE's testimony that the plaintiff was capable of performing other work that existed in significant numbers in the national economy. Tr. 28. Specifically, the ALJ found the plaintiff could perform the following jobs: "Cleaner/Housekeeper" (DOT #323.687-014, unskilled, light, SVP 2 work); "Small Products Assembler" (DOT #706.684-022, unskilled, light, SVP 2 work); and "Stock Checker" (DOT #299.667-014, light unskilled (SVP 2 work). Tr. 28-29. Accordingly, the ALJ found the plaintiff was not disabled from June 20, 2015 through December 28, 2017. Tr. 29.

## II. Analysis

Plaintiff argues that the ALJ erred in evaluating her subjective complaints; and in determining her mental RFC. Dkt. No. 11, at 1. The Commissioner contends the ALJ's decision is supported by substantial evidence and should be affirmed. Dkt. No. 13, at 7. This Court finds the ALJ properly evaluated the plaintiff's subjective complaints and assessed her mental RFC.

**The ALJ's Evaluation of Plaintiff's Subjective Complaints**

An ALJ's assessment of a claimant's subjective complaints involves a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). First, the ALJ must determine whether there is an "underlying medically determinable physical or mental impairment or impairments" that could "reasonably be expected to produce the individual's symptom(s)." 20 C.F.R. §§ 404.1529 (b), 416.929 (b). Next, the ALJ must

6

evaluate "the intensity, persistence and limiting effects of the symptom(s)." 20 C.F.R. §§ 404.1529 (c), 416.929 (c).

If the ALJ finds a claimant's statements about their symptoms are not substantiated by objective medical evidence, then the ALJ is required to make an assessment based on the entire case record including the following relevant factors:

> (1) The claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

Further, "[u]nder [Social Security Ruling] SSR 16-3p, when evaluating a claimant's symptom intensity, '[t]he ALJ must consider the entire case record, including objective medical evidence, a claimant's statements about the intensity, persistence and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant evidence in the claimant's record.'" *Kearney v. Berryhill*, 16-CV-00652-MAT, 2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) (quoting *Vered v. Colvin*, No. 14-CV-4590(KAM), 2017 WL 639245, at *15 (E.D.N.Y. Feb. 16, 2017) (citing SSR 16-3P, 2016 WL 1119029, at *4-6).[4] An ALJ is entitled to great deference when

---

[4] SSR 16-3p also clarifies the evaluation of a claimant's subjective symptoms is not an evaluation of the claimant's character. SSR-16-3p, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017).

7

assessing the credibility of a claimant's subjective complaints in light of the evidence in the record and can only be reversed if those findings are false. *Genier v. Astrue*, 606 F. 3d 46, 49 (2d Cir. 2010); *Andrisani v. Colvin*, No. 1:16-CV-00196 (MAT), 2017 WL 2274239, at *3 (W.D.N.Y. May 24, 2017).

The ALJ applied the two-step process described above. At step one, he found the plaintiff suffered from severe mental impairments that could reasonably be expected to produce her symptoms. Tr. 26. However, he determined her statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent" with the medical evidence and other evidence in the record. *Id.* Specifically, "The [plaintiff] alleges significant anxiety and panic attacks; however, she has not been seen by a psychiatrist or counselor since 2015 and is only taking medication prescribed by her primary care physician." *Id.*

Plaintiff argues the ALJ erred by relying on her failure to seek treatment from a mental health professional in discrediting her subjective complaints, without first exploring why she failed to pursue specialized mental health treatment. Dkt. No. 11, at 7-11. Here, Plaintiff contends that SSR 16-3p, requires the ALJ to address or consider evidence as to why the plaintiff failed to pursue further treatment because she suffers from mental impairments. Dkt. No. 11, at 8 (citing SSR 16-3P, 2016 WL 1119029 at *9). The Commissioner asserts that the ALJ properly evaluated the entire record in determining that the plaintiff's statements concerning the intensity, persistence, and

limiting effects of her symptoms were "not entirely consistent" with the medical evidence and other evidence of record. Dkt. No. 13, at 11. This Court agrees.

Contrary to the plaintiff's assertions, a review of the ALJ's decision reveals the ALJ *did* consider the plaintiff's testimony as to why she did not receive mental health treatment beyond the prescription psychiatric medications prescribed by her primary care physician. For example, in his decision the ALJ noted Plaintiff's testimony that the provider she had treated with on and off since she was twenty years old does not accept her insurance. Tr. 23. Also, the ALJ cited the plaintiff's testimony that she has not had counseling since 2015, due to "trust issues" and felt as though she was being "treated as a child" by her counselor; that she suffered anxiety when attempting to go to another treatment facility (but could not recall the name of that facility); and that she spoke with Crisis Services on one occasion after the police were called to her home for a welfare check.[5] *Id.* Lastly, the ALJ acknowledged the plaintiff's testimony that she scheduled a counseling appointment for December 13, 2017, shortly after the administrative hearing. *Id.*

During the administrative hearing, the plaintiff testified that she takes psychiatric medication daily for anxiety and depression, yet still suffers from panic attacks three to four times per week which she treats with additional doses of psychiatric medication and laying down for several hours. Tr. 66-67. Plaintiff testified

---

[5] The police performed a welfare check of the plaintiff in June 2016, after she made suicidal remarks during a phone call when she was unable to schedule an appointment with a psychiatrist. Tr. 285.

that she suffered from depression symptoms including: crying often, difficulty getting out of bed and recurrent suicidal thoughts, despite taking her prescribed medications. Tr. 62-66. She stated that while she has been searching on and off for mental health treatment, she has had difficulty because she does not like taking calls or making them. Tr. 60. She also described experiencing significant difficulty with leaving her home due to her anxiety, noting that she cancels appointments, grocery shopping trips, and is unable to walk her dogs. Tr. 55-56.

However, as the ALJ noted in his decision, on a function report the plaintiff attested to the following daily activities: she can cook, clean, do laundry, shop for groceries, and shower and dress independently. Tr. 22. Additionally, the ALJ cited the plaintiff's hearing testimony that she does household chores, prepares meals, does laundry, showers every three days, changes her clothes, and cares for her two dogs. Tr. 22-23. "An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination." *Pennock v. Comm'r of Soc. Sec.*, No. 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), *adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016).

The ALJ also cited objective medical evidence including treatment records from Plaintiff's primary care physician, Dawn A. Gais ("Dr. Gais"), documenting the plaintiff's treatment of her anxiety and depression with prescription psychiatric medications throughout the relevant period. Tr. 24-27, 309-10, 318, 321, 383-84, 460. The ALJ noted Dr. Gais' observations that Plaintiff reported experiencing stress and

anxiety in response to her life circumstances such as her divorce, money issues, and her sister's breast cancer diagnosis; as well as physical issues including urinary incontinence. Tr. 24. Additionally, the alleged frequency of Plaintiff's panic attacks (three to four times per week) is unsupported by examination records and treatment notes from Dr. Gais.

Although the ALJ did not explain why he found the plaintiff's testimony regarding her failure to obtain treatment from a mental health professional not entirely credible, it is clear that he considered it along with other factors. Therefore, this Court is able to glean the rationale of his decision. *See Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When … the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). While conservative treatment alone is not grounds for an adverse credibility finding, *see Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), the ALJ may take it into account along with other factors. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (the ALJ was permitted to weigh a claimant's "conservative treatment" regimen in determining that claimant's credibility); *Walker v. Comm'r of Soc. Sec.*, 357 F.Supp.3d 249, 256-57 (W.D.N.Y. Feb. 25, 2019) (upholding the ALJ's finding that the claimant's subjective complaints were belied by his activities of daily living, inconsistent use of ADHD medication, and ten-month delay in seeking mental health treatment for depression).

11

Again, this court lacks the discretion to reweigh the evidence considered by the ALJ and is limited to determining whether he correctly applied the requisite two-step analysis to assess the plaintiff's subjective complaints. Here, the ALJ applied the two-step process and considered the plaintiff's testimony regarding why she did not seek mental health treatment from a psychiatrist or counselor, along with her daily activities and objective medical evidence. *See Marnell v. Comm'r of Soc. Sec.*, 17-CV-6201P, 2018 WL 3620152, at *15 (W.D.N.Y. July 30, 2018) ("the ALJ did not err in considering [the claimant's] noncompliance with recommended treatment as one factor weighing against his credibility.") Accordingly, this court concludes the ALJ's evaluation of the plaintiff's subjective complaints is free from legal error and supported by substantial evidence.

**Mental RFC Assessment**

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)). Mental work-related functions include understanding, remembering, carrying out instructions, and responding appropriately to supervision. *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citations omitted). An RFC finding need not correspond to any particular medical opinion; rather, the ALJ must consider all the evidence and render an RFC finding that is consistent with the record as a whole. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (unpublished opinion); see also *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("the ALJ's RFC finding need not track any one medical

opinion"). In general, an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). However, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (*quoting* SSR 96-8p, 1996 WL 374184, at *7(S.S.A. July 2, 1996)).

Consultative examiner Janine Ippolito, Psy. D. ("Dr. Ippolito"), examined the plaintiff on February 2, 2016, and diagnosed her with major depressive disorder, recurrent, severe, without psychotic features and unspecified anxiety disorder with panic attacks. Tr. 328. Upon examination she concluded, "the results of the present evaluation appear to be consistent with psychiatric problems, and this may significantly interfere with the [plaintiff's] ability to function on a daily basis." Tr. 328. Dr. Ippolito authored a medical source statement (the only medical source statement evaluating Plaintiff's mental capabilities) finding the plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, and make appropriate decisions with no evidence of limitations. *Id.* She also found the plaintiff would have mild limitations in maintaining attention and concentration; moderate limitations with maintaining a regular schedule and relating adequately with others; and marked limitations in appropriately dealing with stress. *Id.* The doctor further opined that the plaintiff's limitations were due to her emotional distress and fatigue. *Id.*

13

The ALJ accorded "great weight" to Dr. Ippolito's opinion in support of his RFC determination reasoning that the doctor has program knowledge; performed a detailed examination (February 2016); the opinion is consistent with the overall record; and generally consistent with the opinion of State agency psychiatric consultant, S. Juriga, Ph. D. ("Dr. Juriga").[6] Tr. 27. The ALJ found the plaintiff retained the mental RFC to understand, remember and carry out simple instructions and tasks; work in a low-stress work environment reflected by simple instructions and tasks; with no supervisory duties; no independent decision-making; no strict production quotas; and minimal changes in work routine and processes. Tr. 21. The ALJ also limited the plaintiff to occasional interaction with coworkers and the public, and frequent interaction with supervisors. Tr. 22.

Here, Plaintiff argues that despite according Dr. Ippolito's opinion "great weight," the ALJ failed to address the doctor's opinions that Plaintiff would have "moderate limitations with maintaining a schedule" and "marked limitations in dealing with stress." Dkt. No. 11, at 14. Specifically, Plaintiff contends the ALJ failed to consider how those limitations would affect her ability to perform work on a regular basis and/or at least explain why the limitations were not adopted. *Id.* Plaintiff asserts that the ALJ's failure to reconcile the RFC assessment with Dr. Ippolito's opinion as to her limitations in maintaining a schedule was particularly harmful, where the VE testified

---

[6] Dr. Juriga did not personally examine the plaintiff but prepared a mental residual functional capacity assessment of the plaintiff which was utilized in the SSA's initial disability determination for the plaintiff. Tr. 97-107.

that a person who is off-task fifteen percent of the day and/or consistently absent twice a month would be unemployable. *Id.*

Marked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements. *Sophie H. v. Saul*, 5:18-CV-375, 2019 WL 3975455, at *7 (N.D.N.Y. Aug. 22, 2019). Furthermore, moderate limitations in ability to keep and maintain a schedule do not significantly limit a plaintiff from performing unskilled work. *Burke v. Berryhill*, 17-CV-24, 2018 WL 1441277, at *7 (N.D.N.Y. Mar. 21, 2018). More generally, moderate limitations in work related functioning do not significantly limit a plaintiff's ability to perform unskilled work. *Martinez v. Comm'r*, 16-CV908, 2017 WL 2633532, at *7 (N.D.N.Y. June 15, 2017), *citing Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).

In the instant case, the ALJ appropriately incorporated marked limitations in dealing with stress and moderate limitations in maintaining a schedule into plaintiff's RFC by limiting plaintiff to work in a low stress work environment reflected by simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes and limiting her to frequent interaction with supervisors and occasional interaction with coworkers and the general public. Dkt. #8, pp.25-26 & 92. *See Williams v. Comm'r,* 17-CV-6400, 2018 WL 4443173, at *8 (W.D.N.Y. Sept. 18, 2018) (RFC accounted for

15

mental impairments by limiting plaintiff to simple, routine work; moderate limitations in ability to regularly attend to a routine and maintain a schedule are not inconsistent with simple, routine work); *Burguess v. Berryhill*, 17-CV-6204, 2018 WL 3569933, at *3 (W.D.N.Y. July 25, 2018) (RFC limiting plaintiff to simple, routine work sufficiently accounts for moderate limitations in maintaining attendance); *Landers v. Colvin*, 14-CV-1090, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) (limiting plaintiff to simple, repetitive and routine tasks sufficiently accounts for limitations maintaining regular attendance).

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is DENED and Defendant's Motion for Judgement on the Pleadings (Dkt. No. 13) is GRANTED. The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED: Buffalo, New York
September 25, 2019

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**